1  Ali M.M. Mojdehi, State Bar No. 123846
   Janet D. Gertz, State Bar No. 231172
2  Rayla Boyd, State Bar No. 256788
   **BAKER & McKENZIE LLP**
3  12544 High Bluff Drive, Third Floor
   San Diego, CA  92130-3051
4  Telephone: +1 858 523 6200
   Facsimile:  +1 858 523-8290
5
   Attorneys for Defendant,
6  Richard M Kipperman, Chapter 11 Trustee

7

8                     UNITED STATES BANKRUPTCY COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  In re | Case No.  04-00769-PB11 |
| 11  NORTH PLAZA, LLC, | Chapter Number 11 |
| 12       Debtor. | Adv. Proc. No. 08-90035-PB |
| 13  | **OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE** |
| 14  DYNAMIC FINANCE CORPORATION, a California Corporation, | |
| 15  | |
| 16       Plaintiff, | |
| 17  v. | Date: January 5, 2009<br>Time: 2:00 p.m. |
| 18  RICHARD M KIPPERMAN, in his capacity as Chapter 11 Trustee for North Plaza LLC; DORENE N. BREE, individually and in her representative capacity, | Judge: Hon. Peter W. Bowie<br>Dept:    4 |
| 19  | |
| 20       Defendants. | |

21

22      The Chapter 11 Trustee, Richard M Kipperman ("Trustee") hereby submits this Objection to

23  the Declaration of Tricia Legittino ("Legittino Declaration") in Support of the Pre-Trial Status

24  Conference, as is supported by the Declaration of Janet Gertz, filed concurrently herewith.  In

25  support of his Objection, the Trustee states as follows:

26      In performance of a court order, in order to avoid a finding of contempt, the person charged

27  with an act must take all reasonable steps in their power to comply with the order.  *Shuffler v.*

28  *Heritage Bank*, 720 F.2d 1141 (9th Cir. Cal. 1983).  A court "may find a party in civil contempt if he

Baker & McKenzie LLP
12544 High Bluff Drive,
Third Floor
San Diego, CA  92130
+1 858 523 6200

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Federal Trade Commission v. Think Achievement Corp.*, 144 F. Supp. 2d 1029, 1034 (N.D. In. 2001) (internal quotations omitted). To avoid contempt, the defendant must come forward with evidence to establish his inability to comply.

The June 2, 2008 order by this Court granted the Trustee's motion to compel production of those records which Dynamic/Sabella (in cooperation with Lei) had withheld on the basis of attorney-client privilege. The Legittino Declaration asserts that, with the exception of 39 documents that are still being "analyzed," there has been full and complete performance by Dynamic/Sabella of the June 2, 2008 order of this Court. Mr. Lei, however, has remained silent and therefore appears to not claim full compliance either with the Trustee's Subpoenas or the Court's June 2, 2008 Order. We therefore end where we began this journey: with Dynamic and Sabella firmly in control of Lei's response to the Subpoenas.

The Trustee respectfully disagrees with many of the assertions that have been made in the Legittino Declaration. In particular, the Trustee respectfully states that there has been no substantial compliance of the Court's June 2, 2008 order. The Court's June 2, 2008 order granted the Trustee's motion to compel production of those records which Dynamic/Sabella (in cooperation with Lei) withheld on the basis of attorney-client privilege. All documents for which attorney client privilege was improperly asserted must now be produced. As discussed below, this has not happened.

As is further detailed in the synopsis that follows,[1] Dynamic/Sabella have failed to take all reasonable steps to comply with the Court's Order. For the Court's convenience, however, a succinct summary of this admittedly convoluted synopsis follows in Part II below.

**I.    THE FIVE PRODUCTION TRANCHES: NO SUBSTANTIAL PERFORMANCE AS TO ANY OF THEM**

   **A.    The Debate Over the "Operative Privilege Logs"**

First, it is necessary to clarify the record. The statements contained in the Legittino Declaration concerning the Trustee's response to their attempts to meet and confer concerning the

---

[1] The Trustee regrets that the synopsis is unavoidably detailed and convoluted. This convoluted history is a testament to the many difficulties the Trustee has encountered in obtaining performance of the Subpoenas by Lei, Dynamic, and Sabella.

2

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF
PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

"operative privilege log" are not accurate.  The Legittino Declaration would lead the Court to believe that Dynamic/Sabella were hampered by the Trustee's lack of cooperation and obdurate refusal to assist the Frandzel firm in identifying the operative privilege logs from which documents would be produced.  This is far from the truth.  In fact, counsel to the Trustee spent a good deal of time on the phone with counsel to Dynamic/Sabella to try to help guide them in understanding the status of the production.  The Trustee's counsel carefully explained to the Frandzel firm at that time the many problems it had encountered with the integrity of the legacy privilege logs.  The Trustee's counsel thus advised the Frandzel firm that, although they were happy to (and did) provide suggestions to the Frandzel firm as to what they *believed* to be the current privilege logs, the counsel to the Trustee was very careful not to permit the Frandzel firm to *rely* upon the Trustee to define the "operative" logs.  In light of the serious deficiencies the Trustee's counsel had noted to counsel for Dynamic and Sabella throughout the course of the proceedings, the Trustee's counsel was unwilling to "bless" any version of any privilege log by designating it as "operative."  Rather, the Trustee's counsel requested that the Frandzel firm instead confer with the Pachulski firm concerning the status of the privilege logs, for which they, as counsel to the parties who had asserted the privilege in the first place, were solely responsible.

A true and correct copy of the correspondence that was sent to counsel for Dynamic and Sabella confirming this initial phone conversation is attached to the Gertz Declaration as Exhibit "A" (stating "I do want to make it clear that we cannot be placed in the position where your firm impliedly relies upon us in any respect concerning the assessment of the privilege logs or the completeness of your production in compliance with the Court's order, including without limitation in respect to determining what are the "operative" privilege logs).  Furthermore, in order to hopefully enable the Frandzel firm to understand the current status of the privilege logs—*including their deficiencies*—the Trustee's counsel at that same time forwarded a copy of the detailed log that the Trustee had prepared, which discussed the history of the various privilege logs, the most recent version of each received by the Trustee, and the Trustee's concerns regarding the deficiencies in each.  In addition, some historical correspondence with the Pachulski firm regarding the problems with the various privilege logs was also forwarded in that same e-mail.  [*See id.*]

3

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

The disingenuous "spin" that has now placed upon this conversation by counsel to Dynamic and Sabella is inappropriate, to say the least.[2] Furthermore, Ms. Legittino is not completely candid with the Court in failing to address the fact that the Trustee's counsel, on October 14, 2008, corresponded with counsel for Dynamic, Sabella, and Lei, (i) setting forth the Trustee's grave concerns regarding their failure to perform the Court's June 2, 2008 order; (ii) and requesting to meet and confer with counsel for Dynamic, Sabella, and Lei to resolve each of these issues pursuant to S.D. Civ. L.R. 26.1. [*See* Exhibit B to Gertz Declaration.] This request went ignored for over a month. The concerns expressed in the October 14 letter remain valid and still have not been addressed.

### B.    Privilege Log I: History and Current Status

Production Tranche No. 1 was first provided to the Trustee electronically on March 8, 2007. The accompanying privilege log, according to the transmittal, "comprise[es] the prior production to Bree's counsel in February and March of 2006." This production also includes the documents that were produced by order of the Court following an in camera review. In addition, the Production Tranche No. 1 contained additional documents that were responsive to the subpoenas to Lei. The identifiers of the documents indicate that they were sourced from the files of Lei, Dynamic, and the Pachulski Firm. Approximately 2,670 documents were produced. At least 545 documents were withheld on various grounds of privilege.

On May 19, Privilege Log 1 was amended in order to make certain corrections for documents that had previously been produced and to make production of certain documents that had previously been withheld. In addition, 11 documents were improperly removed from the privilege log, stating that they were "deleted as non-responsive: Vail Lake after 12/2000." Two documents previously

---

[2] The disingenuousness is demonstrated in part by the fact that the Legittino Declaration dated December 29, 2008, which asserts the "Trustee's counsel's refusal to identify which Privilege Logs it considered to be the 'operative versions'" is contradicted by the statement in Ms. Legittino's August 29, 2008, letter to Ms. Gertz, in which counsel for Dynamic/Sabella responded to the Trustee's August 19, 2008 letter. It states that the logs Trustee's counsel <u>had</u> identified as operative were subsequently updated by the Pachulski firm (but not delivered to the Trustee's counsel), and thus chastising the Trustee's counsel for being wrong. Apparently the adage is quite valid that no good deed remains unpunished.

4

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

identified as "fax transmittal sheets" were improperly deleted as being "VOID Numbers." Privilege was claimed for 373 documents.

Also on May 19, a separate Redaction Log was served on the Trustee, which applied to both Privilege Log 1 and Privilege Log 3 (see below). This redaction log claimed privilege as to an additional 648 documents that had been produced, but with redactions. The redacted documents had not previously appeared on the Privilege Log 1.

On September 15, 2007, the Privilege Log 1 was again amended, this time to produce certain "Produced Privileged Communications," which were stated to be of "inconsequential" nature. Some of the Produced Privileged Communications were, however, produced with redactions (most quite substantial) and thus were still claimed as privileged. The Produced Privileged Communications were removed from the privilege log, except for those that were produced redacted. The Redaction Log was itself not updated to reflect this and appears to have been subsequently ignored by Dynamic/Sabella. The revised Privilege Log 1 continued to claim privilege for 209 documents.

On November 30, 2007, the Privilege Log 1 was again amended, this time to produce six additional documents that were determined not to be privileged "in the process of transitioning the case to the Frandzel firm. The Redaction Log was not changed or incorporated into the revised Privilege Log 1. The revised Privilege Log 1 continued to claim privilege for 203 documents.

********

The Court issued its order commanding production on June 2, 2008. On September 5, 2008, the Frandzel firm provided an "updated Privilege Log," [attached as Exhibit "C" to the Gertz Declaration], that claimed to utilize the November 30, 2007 log as the "operative" baseline. Under this updated Privilege Log, 103 documents were withheld under three *new* bases: (1) 21 documents are withheld on grounds of "work product privilege/attorney client privilege;" (2) 3 documents were stated to be "missing;"[3] and (3) 79 documents were claimed to be "outside scope of subpoena."

Although certain of the documents typified as outside the scope appear to relate to "non-Johnson, unrelated third party" transactions, many appear to the Trustee to be directly responsive to

---

[3] As to the "missing" documents, the missing documents that were identified as such by Dynamic/Sabella on the Privilege Log 1 have subsequently been produced. The Trustee, however, believes that there are other documents missing from the production.

5

the Subpoena.  Furthermore, Pursuant to Fed. R. Civ. Proc. 34, incorporated by Fed. R. Bankr. Proc. 7034, all grounds for objection must be specified in a timely response, or they are waived.  *See Drexel Heritage Furnishing, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255 (M.D.N.C. 2001) (waiver is implicit in Rule 34's requirement that objections be explicitly stated).  At no time during the evidentiary hearing, or indeed prior to the serving the revised Privilege Log on September 5, 2008, did Dynamic/Sabella suggest that there were additional or alternative bases upon which the documents on the privilege logs were being withheld.

Furthermore, the production itself appears to be incomplete, no documents created after February 2006 (that is, after the date of the Bree Subpoena) have been produced from *Dynamic's* own files.[4]  The Federal Rules contain a duty to supplement, which has not been done.

On December 19, 2008, the 3 documents previously "missing" were produced, leaving 100 documents still withheld, plus the 648 documents that still appear on the Redaction Log.  Furthermore, a substantial number of the documents that were produced were produced without referenced attachments and enclosures.

In sum: There has not been substantial compliance with the Court's June 2, 2008 order as to Privilege Log 1.

### C.   Privilege Log 2: History and Current Status

The Production Tranche No. 2 was first provided to the Trustee on February 27, 2007.  As with Production Tranche 1, the Production Tranche 2 was simply a renewed production of the documents previously produced by Dynamic and Sabella and Lei in response to Bree's counsel in February and March of 2006, and no additional documents responsive to the Trustee's subpoena were contained in the February 27, 2007 production or privilege log.  As such, a reservation of rights was made by Dynamic/Sabella, stating that the production included documents not in "the possession, custody or control of Examinees, as opposed to Dynamic and Sabella."  The documents produced in Production Tranche 2 appear to be sourced solely from the electronic PST files of the

---

[4] Only the documents sourced from Lei's computer (Privilege Log 5) and the files of the Pachulski firm (Privilege Logs 2 and 4) were updated, and those appear to have been updated only through the end of January, 2007.

6

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

Pachulski firm attorneys. Dynamic/Sabella claimed privilege as to approximately 2,400 documents at this time.

On May 24, 2007, a "replacement privilege log" was served on the Trustee. The replacement privilege log modified the earlier version by adjusting it to reflect the Court's ruling following the in camera review March 30, 2006. Documents that were produced in redacted form were also noted on the replacement privilege log. The replacement privilege log also was modified to add certain documents that were specifically responsive to the Trustee's subpoena to Lei and thus were admitted to be in Lei's possession and control. The replacement privilege log also included "enhanced descriptions." Approximately 2,425 documents were withheld on various grounds of privilege.

On June 6, 2007 a "*supplemental* privilege log" was served on the Trustee as part of Privilege Log 2, claiming privilege for an additional 357 documents, bringing the total documents withheld in connection with Production Tranche 2 to 2,782.

On September 26, 2007, a "Production Log" was served, containing "Produced Privileged Communications." The Production Log included 663 documents correlating to the Privilege Log 2 and an additional 103 documents correlating to the supplemental privilege log. Some of these Produced Privileged Communications were, however, produced with substantial redactions.

On December 1, 2007, the Privilege Log 2 was again amended, (i) to add certain new entries as to documents that were directly responsive to the Trustee's subpoena to Lei; and (ii) to remove the Produced Privileged Communications that were produced in September 2007.[5] The "supplemental" privilege log previously served in June 2007 was also incorporated into one Privilege Log 2, to create one combined Privilege Log 2. Approximately 2,155 documents were withheld on the basis of privilege on this version of Privilege Log 2.

******

On June 2, 2008 the Court entered its order requiring production of the responsive documents in Lei's possession and control that were formerly claimed as privileged. On December 23, 2008, (more than six months later), the attorneys for Dynamic and Sabella served the Trustee with their

---

[5] Although the transmittal represented that any documents that were produced redacted were noted on the log, no indication was provided on the privilege log as to any documents that may have been produced redacted in September 2007.

7

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF
PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

"production" in response to the Court's order, purporting to utilize the December 1, 2007 Privilege Log 2 as a baseline. [Attached as Exhibit "D" to the Gertz Declaration]. Approximately 1,077 documents were produced. At this same time, an amended Privilege Log 2 was submitted, still asserting a privilege for 1,082 documents—with *amended* bases for the privilege being asserted.

Five new bases of privilege were asserted by Dynamic and Sabella for the first time on December 23: (1) need more information to analyze; (2) Vail date; (3) outside scope of subpoena; (4) Outside scope of Court's Lei order; and (5) "missing".[6] The Trustee has done an initial, very high level analysis of these claims of privilege and finds that they are, in substantial part, insufficient. Furthermore, as noted above, these belated assertions of new grounds of privilege are waived. Dynamic and Sabella are stuck with the privilege logs they previously provided, which serve as party admissions.

First, the Trustee believes that more than six months should be more than enough time for Dynamic and Sabella to obtain all of the information that is required to enable a proper production. To the extent they still feel that they "need more information," they have missed their opportunity to obtain it and should simply produce these documents forthwith.

Second, Dynamic/Sabella's withholding of documents pursuant to the claim that they are "Vail Date" documents appears to be incorrect. The Court's September 7, 2007 order in this respect specifically provided that

> "[T]he Court determines that certain facts concerning Vail Lake USA, LLC are relevant to the property of the estate. Examinees shall therefore produce all non-privileged documents responsive to the Subpoena . . . that refer or relate to Vail Lake USA, LLC, provided, however, that such documents are only required to be produced to the extent such were generated or created up to and including January 1, 2004; provided further however that this Order shall be without prejudice to the Trustee's ability to submit additional evidence demonstrating the relevance to this case and the need for production by Examinees of such documents that were generated or created after January 1, 2004."

Despite the Court's specific order, Dynamic/Sabella have extended its provisions beyond Vail Lake USA, LLC to *other* Bill Johnson related entities. The so called "Vail Date" documents

---

[6] As to the "missing" documents, the missing documents that were identified as such by Dynamic/Sabella on the Privilege Log 2 have subsequently been produced. The Trustee, however, believes that there are other documents missing from the production, as noted in Part II below.

8

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

also appear to be withheld in a very arbitrary and capricious fashion. For example, documents have been withheld, but other documents bearing the exact title and subject matter description have been produced. Often, one portion of an of e-mail string has been produced, while other emails embodying this same string discussion have not, although the withheld e-mail bears exactly the same description as the ones produced. [Compare, e.g., PLII_000773 – 774 with PLII_000772.] Other documents withheld as "Vail Date" have descriptions that demonstrate that they do not fall within the Court's September 7, 2007 order, quoted above, and otherwise show that such are directly relevant to this bankruptcy case. [*See, e.g.,* PLII_000778 (titled "attorney communication re: Dynamic/Bree: phone conversation with Hosack and Phillips); PLII_001172 (titled "Documentation to client re: Dynamic/Bree: exhibits from Bree deposition")]. In addition, communications that are being withheld that relate to Vail Lake, USA, although later dated, are communications regarding events that occurred prior to January 1, 2004. [*See, e.g.*, PLII_002360-002363 (titled "Attorney communication re: Dynamic Finance/Vail Lake: Bree $1.2 Million Vail Lake Note)] Furthermore, many documents concerning *other* Vail Lake entities are being improperly withheld under this category. Some are directly related to issues in dispute regarding Dynamic's claim. [See, e.g., PLII_001755 and following (titled "Communication to counsel re: ACS Loan Schedule - $952K paydown," which e-mail obviously discusses a purported "paydown" to Dynamic's North Plaza loan)]. These exemplars are provided only as examples, and not by way of limitation.[7]

Third, a substantial majority of the documents now labeled "outside scope of subpoena" are clearly within the scope of the subpoena and are highly relevant to this case. For example, and not by way of limitation, documents prepared by Isaac Lei concerning "loan calculation[s]" and "accounting adjustments" are being withheld on these grounds.

Fourth, a large amount of communications are being withheld as an "attorney internal communication" where they were not sent outside of the Pachulski Firm. It would appear, however, that the grounds for withholding documents on the basis of attorney-client privilege in connection with a production given to a subpoena to Isaac Lei are highly dubious. The Trustee believes that a

---

[7] Wherever examples are given herein, they are intended to be only examples and not by way of limitation. The Trustee reserves all rights.

9

large portion of these documents, to the extent they are even privileged, should in any event be produced in redacted form, as they appear to merely be transmitting non-privileged information and/or attachments from one attorney to another. Furthermore, communications between the Pachulski firm and Dynamic attaching Pachulski invoices are being improperly withheld under this category. Attorney fee invoices are not generally privileged communications. Furthermore, a substantial number of e-mails have been produced that demonstrate that Lei was the virtual "command and control center" for review and determination of the payment of Dynamic's and Sabella's attorney fees in connection with the Johnson-related entities.

In addition, documents created after February 2007 (that is, subsequent to the date of the Trustee's Subpoena) have not been produced from the Pachulksi files. The Federal Rules contain a duty to supplement, and the Trustee's counsel has requested these subsequent documents in writing from Dynamic/Sabella and Lei on many occasions. Furthermore, a substantial number of the documents that were produced were produced without referenced attachments and enclosures, which must be produced. The missing enclosures are not *de minimis,* and they have great substantive import. For example (and not by way of limitation) the documents produced in Production Tranche 2 indicate that the loan ledgers that were submitted to the Court as evidence in these proceedings had been substantially modified after the fact. The missing enclosures are necessary to enable the Trustee to piece together the puzzle of the true nature of the original North Plaza loan ledger.

In sum: There has not been substantial compliance with the Court's June 2, 2008 order as to Privilege Log 2.

### D.    Privilege Log 3

Production Tranche 3 was first served on the Trustee on March 30, 2007, along with a Privilege Log 3. Production Tranche 3 was described as containing "additional documents which have been assembled and reviewed for production" pursuant to the Trustee's subpoenas. The documents appear to have been sourced from the files of the Pachulski firm and from Lei's computer and appear to have been intended to supplement the response previously provided in Privilege Log 1, as specific to the subpoenas issued to Isaac Lei.

10

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

On April 23, 2007, the Privilege Log 3 was amended to correct the identification of documents which were actually produced and thus should not have been included on Privilege Log 3, to produce 5 additional documents, and to "claw back" one document, which was inadvertently produced in unredacted form.

On May 19, 2007, the Privilege Log 3 was again amended to make additional corrections. These corrections appear to have been necessary to reflect the documents that had previously been produced pursuant to the Court's in camera review but which had incorrectly been listed on the Privilege Log. Subsequent to these corrections, the Privilege Log claimed privilege for 49 withheld documents.

Also on May 19, a separate Redaction Log was served on the Trustee, which applied to both Privilege Log 3 and Privilege Log 1 (see above). This redaction log claimed privilege as to a combined total of 648 documents that had been produced, but with redactions. The redacted documents had not previously appeared on the Privilege Log 3.

On September 15, 2007, the Privilege Log 3 was again amended, this time to produce certain "Produced Privileged Communications," which were stated to be of "inconsequential" nature. Some of the Produced Privileged Communications were, however, produced with redactions (most quite substantial) and thus were still claimed as privileged. The Produced Privileged Communications were removed from the privilege log, except for those that were produced redacted. As with Privilege Log 1, the Redaction Log was itself not updated to reflect this. The revised Privilege Log 3 continued to claim privilege for 15 documents.

******

The Court issued its order commanding production on June 2, 2008. On September 5, 2008, the Frandzel firm provided an "updated Privilege Log," [attached as Exhibit "E" to the Gertz Declaration], that claimed to utilize the September 15, 2007 log as the "operative" baseline. Under this updated Privilege Log, 4 documents were withheld on the basis of attorney client privilege. Most appear to concern non-privileged invoices for legal services, including one for the services of Mr. Kerekes that were apparently provided to Ms. Sabella.

11

In sum: There has not been substantial compliance with the Court's June 2, 2008 order as to Privilege Log 3.

### E.    Privilege Log 4

Production Tranche 4 was first served on the Trustee on April 19, 2007, along with a Privilege Log 4, which claimed privilege for approximately 430 documents.  Production Tranche 4 was provided *specifically* in response to the Trustee's subpoena as an "'update' of information generated after those emails previously produced to [the Trustee] as part of the prior production in response to the requests served by the Bree parties."  The documents in this Production Tranche appear to be sourced solely from the electronic PST files of the Pachulski firm attorneys.

On April 23, the Privilege Log 4 was amended, to correct several typographical errors and to include the basis for the privilege claimed, which had been omitted from the Log served on April 19.

On May 27, 2007, a *new* Privilege Log 4 was served, which was stated by Dynamic and Sabella to "relate[ ] to the replacement" set of documents that had been produced in Production Tranche 4.  Approximately 412 documents were withheld at this time on the basis of some privilege asserted.[8]

On September 15, 2007, Dynamic and Sabella served a Production Log, relating to the Produced Privileged Communications that were produced from Privilege Log IV, a total of 103 documents.  No redactions were noted on the Production Log.  No amended Privilege Log IV was provided to the Trustee to reflect the Produced Privileged Communications.

******

On June 2, 2008 the Court entered its order requiring production of the responsive documents in Lei's possession and control that were formerly claimed as privileged.  On September 5, 2008, Dynamic and Sabella (through the Frandzel Firm) served the Trustee with (i) a Privilege Log 4 "coded as of 10/19/2007" reflecting 318 documents withheld; (ii) A Privilege Log 4 dated August 29, 2008;[9] and (iii) a new (reformatted) Privilege Log 4 dated September 3, 2008. [Attached as Exhibit "F" to the Gertz Declaration].

---

[8] There appears to be no explanation for the discrepancies between the version served on April 19, 2007 and this version.
[9] The Trustee had not previously received either the October 19, 2007 or August 28, 2008 versions

The new Privilege Log dated September 3, 2008 that was provided in response to the Court's June 2, 2008 order asserts several *new* bases for Dynamic/Sabella's claims of privilege: (i) documents shared only by attorney's; (ii) past date limit; and (iii) outside scope of the subpoena.

First, approximately 100 documents are being withheld as "attorney-client work product" privileged communications, based upon the assertion that they were not sent outside of the Pachulski Firm. In light of the fact that Production Tranche 4 was created specifically in response to the Trustee's Subpoena (not to the Bree Subpoena), there can be no valid claim that each of the documents contained on Privilege Log 4 were not in Lei's possession and/or control. As such, there are no grounds for withholding documents on this basis. The Trustee believes that, to the extent any privilege would still attach, a substantial portion of these documents should be produced in redacted form, as they appear to merely be transmitting non-privileged information and/or attachments from one attorney to another.

Second, the "past date limit" category includes numerous dubious entries. [See, e.g., PSZY-SEG-003911 (dated November 30, 2006, copied to Lei and described as "attorney internal communication re: Chamber[s] Note, litigation, discovery, legal issues [string email]"). Pursuant to the Federal Rules, the Trustee is entitled to all relevant, responsive documents created up to and including the current date.

Third, the majority of the documents withheld as "outside scope of subpoena" appear to be well within the scope of the subpoena. Many deal with invoices for legal services that were transmitted by the Pachulski firm to Lei, which are fully discoverable. To the extent these invoices may concern non-Johnson entities, it is Dynamic/Sabella's burden to demonstrate this and/or to produce redacted invoices. Furthermore, as noted above, each of these newly asserted grounds for privilege have long ago been waived

In sum: There has not been substantial compliance with the Court's June 2, 2008 order as to Privilege Log 4.

**F.     Privilege Log 5**

---

of the Privilege Log 4.

13

Production Tranche 5 was first produced to the Trustee on May 26, 2007 and, at the same time, Privilege Log 5 was served on the Trustee, asserting privilege for 898 documents. The Production Tranche 5 appears to have been sourced solely from the computer files of Lei and appears to include documents created up through January 31, 2007. No updating appears to have been done at this time (or at any time subsequent) to review documents created after January 31, 2007 for production.

On September 18, 2007, the Trustee was served with a "supplemental" Privilege Log 5, which was stated to be in compliance with the Court's Order dated September 7, 2007, which set forth (i) the parameters for the production of Produced Privileged Communications; (ii) the limitations on production of communications relating to Vail Lake USA, LLC; and (iii) the denial of the Trustee's request for production as to Lei's non-Johnson activities. The supplemental Privilege Log 5 contained entries for 308 documents, the majority of which were coded as "communication referenc[ing] non-Johnson transaction." The Produced Privileged Communications that were produced in redacted form were also added to this supplemental log. In addition, it appears that a few documents were included on the supplemental log that had been previously omitted from the Privilege Log 5 that had been earlier served on the Trustee.

On September 19, 2007, the Trustee was served with a Production Log 5, relating to Produced Privileged Communications, pursuant to which 572 documents were produced.

******

On June 2, 2008 the Court entered its order requiring production of the responsive documents in Lei's possession and control that were formerly claimed as privileged. On September 5, 2008, Dynamic and Sabella (through the Frandzel Firm) served the Trustee with (i) a Privilege Log 5 "edited to show documents coded as of 10/19/2007" reflecting 318 documents withheld; (ii) a Privilege Log 5 dated August 29, 2008;[10] and (iii) a new (reformatted) Privilege Log 5 dated September 3, 2008. [Attached as Exhibit "G" to the Gertz Declaration],

---

[10] The Trustee had not previously received either the October 19, 2007 or August 28, 2008 versions of the Privilege Log 5.

14

The new Privilege Log dated September 3, 2008 that was provided in response to the Court's June 2, 2008 order asserts several new bases for Dynamic/Sabella's claims of privilege: (i) outside date limit; (ii) outside scope of the subpoena; and (iii) "missing"[11] documents. The Trustee is, frankly quite surprised by many of the documents that are still being withheld under these asserted categories.

First, the documents that have been branded "outside the scope of the subpoena" clearly are not outside the scope. For example, documents are withheld that are described as discussing the loan calculations. As stated above, in light of the content of documents that have been produced, which indicate the substantial modification of some of the loan calculations after the fact, these documents are critically important. Communications regarding the Pachulski firms bills are also withheld under this category. Perhaps most surprising of all, however, is the rather blatant attempt to continue to withhold certain communications regarding the $952,000 (i.e., "paydown") that has long been shrouded in mystery and continues to be a key issue in connection with Dynamic's claim.

Second, the documents that have been labeled "outside date limit" appear to be withheld in a very arbitrary and capricious manner. This category holds a grab bag of subject descriptions, mostly highly relevant to this case. For example, communications regarding Walker Basin have been withheld, although the Walker Basin loan is highly relevant to one of the Dynamic proofs of claim filed in this bankruptcy case. Likewise, communications regarding "Parcel 14 valuation" have been withheld on these grounds. Parcel 14 was, of course, the portion of the North Plaza property that helped secure the Walker Basin loan for a period of time. Also withheld under this category is an email communication with the Pachulski firm described as "communication to counsel re: Revised TAG [the Alcon Group] compensation," along with communications that appear to discuss the Vail Lake membership buyout involving North Plaza. The Trustee is, of course, very interested in reviewing documents of this nature, which he is most certainly entitled to receive pursuant to the Court's June 2, 2008 Order. As noted above, each of these newly asserted grounds for privilege have long ago been waived.

---

[11] As to the "missing" documents, the missing documents that were identified as such by Dynamic/Sabella on the Privilege Log 5 have subsequently been produced. The Trustee, however, believes that there are other documents missing from the production.

In addition, the new Privilege Log dated September 3, 2008 entirely ignores the September 18, 2007 Supplemental Privilege Log 5 and does not account for the 308 documents that were withheld pursuant to that Log. The Trustee also notes that, even after the supplementation of the Privilege Log 5, there appear to be serious omissions in the production made by Lei. In this respect, the documents on the Privilege Log 5 reflecting Lei's communications with the Pachulski firm should substantially mirror the communications by the Pachulksi firm with Lei that are reflected on the Privilege Logs 2 and 4 other as to dates, content, and subjects. In fact, they do not. There are also some very important documentary gaps in the production of documents sourced from Lei's computer hard drive.

In sum: There has not been substantial compliance with the Court's June 2, 2008 order as to Privilege Log 5.

## II. SUMMARY OF STATUS

While reserving all rights, the Trustee provides this brief synopsis of the above:

**A. Privilege Log 1**

1. 648 documents that had been produced, but with redactions, and which appeared on the May 19, 2007 Redaction Log must be produced without redaction;

2. Numerous non-privileged documents within the scope of the subpoena are being wrongfully withheld;

3. Dynamic/Sabella have not met their burden as to documents still withheld as attorney-client privileged, and these withheld documents must therefore be produced;

4. Responsive documents from Dynamic's/Sabella's files created after February 2006 have not been produced and must be produced;

5. 984 documents are still missing one or more enclosures; and

6. 265 documents have been identified as missing by the Trustee from Production Tranche 1. This includes documents (i) missing pages, (ii) where the Bates numbering sequence contains gaps, (iii) where a document is stated as "produced" but has not been; or (iv) where documents have been labeled simply as "void" but where the sequence of the document on the log demonstrates that it likely has substantive content.

**B. Privilege Log 2**

1. All documents coded as "need more information to analyze" must be immediately produced;

2. Numerous non-privileged documents improperly categorized as "Vail date" must be produced;

3. Numerous non-privileged documents improperly categorized as "outside the scope of subpoena" must be produced;

4. Dynamic/Sabella have not met their burden as to documents still withheld as attorney-client privileged, and these withheld documents must therefore be produced;

5. Responsive documents created after January 2007 have not been produced and must be produced;

6. An unknown number of documents have been produced without their enclosures/attachments;[12]

7. An unknown number of documents first produced redacted have not been reproduced without redaction;

8. An unknown number of documents appear to be missing from Production Tranche 2. This includes (i) documents missing pages, (ii) where the Bates numbering sequence contains gaps, (iii) documents stated as "produced" that have not been; or (iv) documents labeled as "void" but where the context demonstrates that it likely has substantive content.

**C.   Privilege Log 3**

1. Dynamic/Sabella have not met their burden as to documents still withheld as attorney-client privileged, and these withheld documents must therefore be produced;

2. Approximately 61 documents first produced redacted have not been reproduced without redaction;

3. Approximately 107 documents have been produced without their enclosures/attachments.

**D.   Privilege Log 4**

1. Numerous non-privileged documents improperly categorized as "past date limit" must be produced;

2. Numerous non-privileged documents improperly categorized as "outside the scope of subpoena" must be produced;

---

[12] The Trustee reserves all rights concerning documents have been produced without their enclosures/attachments and documents first produced redacted have not been reproduced without redaction, as there has been insufficient time to review the recent production to account for these items. A high level review of the production CDs discloses that the omissions of attachments are quite substantial.

17

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

3. Dynamic/Sabella have not met their burden as to documents still withheld as attorney-client privileged, and these withheld documents must therefore be produced;

4. Responsive documents created after January 2007 have not been produced and must be produced;

5. Approximately 27 documents have been produced without their enclosures/attachments;

6. Approximately 5 documents first produced redacted have not been reproduced without redaction;

7. Approximately 15 documents appear to be missing from Production Tranche 4.  This includes (i) documents missing pages, (ii) where the Bates numbering sequence contains gaps, (iii) documents stated as "produced" that have not been; or (iv) documents labeled as "void" but where the context demonstrates that it likely has substantive content.

E. **Privilege Log 5**

1. The approximately 308 documents that were withheld pursuant to the "supplemental" Privilege Log 5 dated September 17, 2007 must be produced

2. Numerous non-privileged documents improperly categorized as "outside date limit" must be produced;

3. Numerous non-privileged documents improperly categorized as "outside the scope of subpoena" must be produced;

4. Responsive documents created after January 2007 have not been produced and must be produced;

5. Approximately 1,483 documents have been produced without their enclosures/attachments;

6. Approximately 91 documents first produced redacted have not been reproduced without redaction;

7. Approximately 102 documents appear to be missing from Production Tranche 5.  This includes (i) documents missing pages, (ii) where the Bates numbering sequence contains gaps, (iii) documents stated as "produced" that have not been; or (iv) documents labeled as "void" but where the context demonstrates that it likely has substantive content;

8. The substantial gaps in the Lei production must be addressed immediately.  Furthermore, the Trustee was advised by the Pachulski firm that 40,000 documents were found by them to reside on Mr. Lei's computer hard drive.  Only a very small fraction (approximately 10 percent) of these 40,000 documents has been produced.

A list of (i) missing enclosures; (ii) missing documents; and (iii) documents still redacted is attached as Exhibit H to the Gertz Declaration. The Trustee is still completing this review and

18

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

reserves all rights concerning the identification of documents in any of these categories as well as additional errors and omissions, as there has been insufficient time to review the productions in their entirety to account for these items. Even the very preliminary analysis that is attached as Exhibit H reveals that the errors and omissions are quite substantial.

### III.    CONCLUSION

The United States Supreme Court has opined that "[a] subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase." *United States v. Bryan*, 339 U.S. 323, 891 (1950). The long, expensive, and completely unnecessary chase that the Trustee has endured in order to try to obtain the documents responsive to the Trustee's February 2007 Subpoenas would test the patience of Job.

The Trustee respectfully submits that Dynamic/Sabella have now failed to take all reasonable steps to comply with the Court's Order and are in contempt. In particular, rather than immediately present to the Court for its determination any concerns that they may have had in connection with producing each and every document that was previously listed on the five privilege logs, they have continued to withhold documents under dubious claims and have asserted new, bases for withholding the documents—taking untenable, unsupportable  positions in their continued assertions of privilege as to the majority of the thousands of documents still being withheld. This type of response does not constitute substantial compliance with the Court's order. Dynamic and Sabella are stuck with the privilege logs they created. Their improper attempts after the fact to revise these logs and recharacterize the facts concerning the withheld documents cannot succeed.

******

The Trustee has waited patiently for Dynamic and Sabella to perform the Court's June 2, 2008 order. Now absolutely certain that they have no intention to do so, the Trustee will shortly be submitting pleadings in the main bankruptcy case to address Dynamic, Sabella, and Lei's apparent contempt of this Court's order. The Trustee files this statement in this Adversary Proceeding merely to update the Court on the status quo and to correct what appear to be significant omissions in the Legittino Declaration.

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1

The Trustee also notes that under Fed. R. Civ. Proc. 37(2)(A), incorporated by Fed. R. Bankr. Proc. 7037, if a party fails to obey an order to provide discovery, the court may issue further just orders, including "(ii) prohibiting the disobedient party from supporting or opposing designated claims of defenses, or from introducing designated matters into evidence; (iii) striking pleading in whole or in part…(v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order…" *See* Fed. R. Civ. Proc. 37(2)(A). The Trustee respectfully suggests that, in light of the above, it would be neither timely nor just to proceed any further with this Adversary Proceeding pending a full determination of Dynamic/Sabella's contempt of the Court's June 2, 2008 Order.

Respectfully submitted,

Dated:  January 5, 2009        BAKER & McKENZIE LLP

By: /s/ Ali M.M. Mojdehi
　　Ali M.M. Mojdehi
　　Janet D. Gertz
　　Rayla Boyd
　　Attorneys for Defendant
　　Richard M Kipperman, in his capacity as Trustee for North Plaza LLC

20

ADV. PROC. NO. 08-90035-PB/CASE NO. 04-00769-PB11
OBJECTION OF CHAPTER 11 TRUSTEE, RICHARD M KIPPERMAN TO DECLARATION OF TRICIA LEGITTINO IN SUPPORT OF PRE-TRIAL STATUS CONFERENCE

SDODMS1/696713.1